**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-2571
_____

PRIMERICA LIFE INSURANCE COMPANY

v.

DOLORES FORD COLEMAN; FORD MEMORIAL TEMPLE, INC.; NEXT
GENERATION FELLOWSHIP MINISTRIES, INC.; TURAY MEMORIAL FUNERAL
CHAPEL, INC.; SYREETA LAWRENCE; DREW SMITH; SHANELLE FORD;
ANDREW J. FORD, III; BRITNEY FORD; NORTH CAROLINA MUTUAL
FINANCIAL, LLC

FORD MEMORIAL TEMPLE, INC.; NEXT GENERATION FELLOWSHIP
MINISTRIES, INC.; TURAY MEMORIAL FUNERAL CHAPEL, INC.,
                                                                    Appellants

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:19-cv-05546)
District Judge: Honorable Nitza I. Quiñones Alejandro
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on September 24, 2024

Before: KRAUSE, BIBAS, and AMBRO, *Circuit Judges*

(Filed: September 25, 2024)

_____

OPINION*

_____

BIBAS, *Circuit Judge*.

As Bishop Andrew Ford lay dying of cancer, members of the Ford Memorial Temple were scheming. Ford's $300,000 life-insurance policy originally named his sister Dolores as the beneficiary. But in his last three days, a group that included members of Ford Memorial changed the policy to benefit their church and a local funeral home. The day before he died, they kept Ford awake until 2 a.m.; they claim that he approved changing the beneficiaries early that morning. After having him sign a blank form, one of the members filled it in and submitted it to the insurance company. Under the change, Ford Memorial would get $215,000; Turay Memorial Funeral Chapel, $50,000; Next Generation Fellowship Ministries, $10,000; and five people, $5,000 each.

After Ford died, the insurance company interpleaded Dolores and all the new beneficiaries to resolve their competing claims. At trial, the jury found that Ford had been unduly influenced to change his policy. So the District Court entered declaratory judgment for Dolores; it also denied Ford Memorial's post-trial motions.

Ford Memorial, Turay Funeral, and Next Generation now appeal, raising three claims. *First,* they argue that the District Court should have instructed the jury to apply Pennsylvania's rather than New Jersey's undue-influence law. Dolores argues that they did not

_____

* This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

preserve this issue. But they asked for the Pennsylvania-law jury instruction. And when the District Court did not give it, the court "rejected the request in a definitive ruling on the record." Fed. R. Civ. P. 51(d)(1)(B); *accord Franklin Prescriptions, Inc. v. N.Y. Times Co.*, 424 F.3d 336, 339 (3d Cir. 2005). That was enough to preserve the issue.

Even so, their choice-of-law argument fails on the merits. We review the jury instruction de novo to discern whether it misstated the law. *Franklin Prescriptions*, 424 F.3d at 338. Because the District Court sits in Pennsylvania, we apply Pennsylvania's two-step approach to choice of law. *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 226, 231 (3d Cir. 2007). At step one, the parties agree that there is a true conflict between Pennsylvania's and New Jersey's undue-influence law.

At step two, the court properly held that New Jersey has a greater interest in this case. *Id.*; Restatement (Second) of Conflicts of Laws §§ 188, 192, 201 (1971). All the main events happened there: as Ford lay dying in a New Jersey hospital, he suffered undue influence. Plus, Ford lived and Dolores still lives in New Jersey. New Jersey has a strong public-policy interest in protecting its residents from undue influence. By contrast, Pennsylvania's main connection to this dispute is that Ford used to live there and took out the policy there. So the court rightly instructed the jury to apply New Jersey law.

*Second*, Ford Memorial claims that the District Court should have granted it judgment as a matter of law, or at least a new trial. It argues that Dolores never proved undue influence. We review the former claim de novo, applying the same standard as the District Court, and the latter claim for abuse of discretion. *Curley v. Klem*, 499 F.3d 199, 205–06 (3d Cir. 2007). Both claims fail. There was plenty of proof that employees and members

3

of Ford Memorial pestered a drowsy, dying man into signing a blank policy-change form that they later filled in to benefit their church.

*Third*, Turay Funeral and Next Generation also appeal the denial of their motion for judgment as a matter of law. They insist that they did not actually influence Ford, so they should get the benefit of the policy changes. Not so. True, New Jersey courts will sever parts of a will untainted by undue influence, but only when the taint is limited to certain parts. *In re Prob. of Alleged Will of Landsman*, 725 A.2d 90, 97–98 (N.J. Super. Ct. App. Div. 1999). Here, by contrast, the taint infects the entire new list of beneficiaries. Because the whole policy change is "tainted by undue influence," we must "overturn[ ]" the whole thing to restore the original. *Haynes v. First Nat'l State Bank*, 432 A.2d 890, 897 (N.J. 1981). We will thus affirm.